# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *   *
JANET FLORENCE,                          *      No. 15-255V
                                         *      Special Master Christian J. Moran
                  Petitioner             *
                                         *
v.                                       *      Filed: October 6, 2016
                                         *
SECRETARY OF HEALTH                      *      Attorneys' Fees and Costs
AND HUMAN SERVICES,                      *
                                         *
                  Respondent.            *
* * * * * * * * * * * * * * * * * * * *   *
```

Lawrence R. Cohan and David J. Carney, Anapol Weiss, Philadelphia, PA, for
Petitioner;
Heather L. Pearlman, U.S. Department of Justice, Washington, DC, for
Respondent.

## PUBLISHED DECISION ON ATTORNEYS' FEES AND COSTS[1]

Petitioner Janet Florence filed her application for attorneys' fees and costs
on June 3, 2016.  The Secretary objects to the amount the petitioner has requested
and presents an alternative range of $35,000.00 to $45,000.00.  The petitioner is
awarded **$50,000.00.**

* * *

Ms. Florence filed a petition under the National Childhood Vaccine Injury
Act, 42 U.S.C. § 300aa—10 through 34 (2012), on March 12, 2015.  The petition
alleged that Ms. Florence suffered from lymphedema in her left arm after she

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and
Promotion of Electronic Government Services), requires that the Court post this decision on its
website.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing
redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).
Any redactions ordered by the special master will appear in the document posted on the website.

received the influenza vaccine on December 2, 2011.  See Pet., filed Mar. 12, 2015.

In May 2015, the undersigned ruled, based upon the respondent's concession, see Respondent's Report, filed May 19, 2015, that the petitioner is entitled to compensation under the Vaccine Act.  Between May 2015 and April 2016, the parties quantified the amount of compensation to which Ms. Florence was entitled.  The petitioner and the respondent retained separate life care planners during this process.  In April 2016, the petitioner received compensation consistent with a proffer.  Decision, issued Apr. 21, 2016, 2016 WL 2990608 (awarding $258,381.93 plus an annuity).

In June 2016, the petitioner filed a motion for attorneys' fees and costs requesting $43,005.00 in fees and $11,448.78 in costs, for a total amount of $54,453.78.  The Secretary objected to the amount, stating that a reasonable amount is between $35,000 and $45,000, and suggesting the undersigned award attorneys' fees and costs within that range.  See Resp't's Resp., filed June 20, 2016, at 3.  In support of her estimated range, the Secretary listed comparable cases, and their associated fees and costs.  Id.  Petitioner replied on May 27, 2016, listed her own comparable cases, and asked for an additional $725.00 in fees for her reply.  Pet'r's Reply, filed June 20, 2016, at 7-8.  Therefore, the petitioner now requests $43,730 in fees and $11,448.78 in costs, for a total amount of $55,178.78.  At this point, the motion is ready for adjudication.

*      *      *

In this case, the petitioner received compensation, and thus is entitled to an award of attorneys' fees and costs.  42 U.S.C. § 300aa-15(e).  The ensuing question is the reasonable amount for attorneys' fees and costs.

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.

For attorneys' fees, the petitioner has requested $43,730.  Attorney David Carney performed most of the work and seeks compensation at $290 per hour.  Mr.

2

Carney, at times, consulted with attorney Larry Cohan, who seeks compensation at $400 per hour.  Paralegals also assisted, and their proposed rate of compensation is $125 per hour.

The Secretary did not directly challenge any of the requested rates as unreasonable.  In the undersigned's experience, these rates are reasonable.

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

Attorneys are expected to work efficiently by delegating appropriate assignments to paralegals, who may be compensated separately, and to secretaries, whose compensation is included in the attorney's hourly rate.  See Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n. 5 (Fed. Cir. 1983) (secretarial expenses are covered by an attorney's hourly rate); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407–08 (1997) ("secretarial support is included within an attorney's hourly rate and is not reimbursable"); Riggins v. Sec'y of Health & Human Servs., No. 99–382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009) ("[T]he time spent by an attorney performing work that a paralegal can accomplish should be billed at a paralegal's hourly rate, not an attorney's"), mot. for rev. denied, (Dec. 10, 2009), aff'd, 406 Fed. Appx. 479 (Fed. Cir. 2011).

When attorneys fail to provide sufficient information in their billing invoices, special masters may reduce the award.  See Barclay v. Sec'y of Health & Human Servs., No. 07-605V, 2014 WL 2925245, at *4 (Fed. Cl. Spec. Mstr. Feb. 7, 2014) (reducing an attorney's requested time due to vague entries which made it impossible to determine the reasonable amount of time, and reducing requested time due to the attorney's performing tasks reasonably delegated to a paralegal or secretary).

The undersigned conducted a line-by-line analysis of all the entries documented in the timesheets, despite the fact that when making reductions, a line-by-line evaluation of the fee application is not required.  McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, at *5 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (quoting Wasson by Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482 (1991)).  The attorneys' timesheets are organized, and do not contain block entries.  However, there are two issues with the petitioner's timesheets:  (1) excessive time is billed for very routine tasks; and (2) it is impossible to determine whether certain activities are reasonable because of vague entries.  Each issue is discussed more specifically below.

3

First, the petitioner's attorneys billed excessive time for routine tasks, or, in the alternative, performed work that a paralegal or secretary could perform. A few examples will suffice. On August 5, 2015, the undersigned's law clerk coordinated a date for a status conference to discuss the petitioner's July 31, 2015 status report. The petitioner's counsel billed half an hour for this coordination. On September 14, 2015, the petitioner filed a five-sentence status report stating that she needed an additional 45 days to work with her life care planner and provide a settlement demand to the respondent. The petitioner's counsel billed half an hour to prepare the five-sentence status report.[2] On April 21, 2016, the petitioner billed .8 hours to review a page and a half boilerplate decision (with attachments that were reviewed and billed previously) and file a joint notice not to seek review.[3] Excessive billing for routine tasks is unacceptable in the Vaccine Program. See Yang v. Sec'y of Health & Human Servs., No. 10-33V, 2013 WL 4875120 (Fed. Cl. Aug. 22, 2013).

Second, the petitioner's attorneys' billing records are sometimes vague, making it impossible to determine whether certain activities are necessary.

In November 2004, the Office of Special Masters issued revised Guidelines. The Guidelines state "counsel are advised to maintain detailed contemporaneous records of time and funds expended under the Program." Office of Special Masters, Guidelines for Practice under the National Vaccine Injury Compensation Program (Rev. Nov. 2004) at § XIV. Detailed (or stated another way, non-vague) contemporaneous records are the petitioner's responsibility and allow the Office of Special Masters to determine the reasonableness of attorneys' fees requests. See Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011) (stating that requiring entries which permit effective review of the fees is in accord with cases from the Federal Circuit and the Supreme Court).

Inconsistent with Avgoustis, the petitioner's attorneys' billing records are sometimes vague. Almost half of the petitioner's billing entries (approximately

---

[2] Prior to filing this extension, the petitioner did not coordinate with the respondent, or indicate in her motion whether an opposition to the motion would be filed, as required under Vaccine Rule 19(b)(3). Subsequently, on September 16, 2015, the undersigned's chambers requested the petitioner coordinate with opposing counsel as required under Vaccine Rule 19(b)(3). The petitioner billed 24 minutes to coordinate with the respondent and send a five-word reply email to chambers.

[3] There are other examples of excessive time being billed for routine work, and work being billed at attorney rates that is unreasonable. The undersigned, however, prefers not to create a litany of complaints about the petitioner's attorneys, after all, they helped their client obtain a concession and significant award.

100 out of 212) do not provide enough detail for the undersigned to determine if the activity was necessary (and therefore reasonable), or if the work was in fact attorney work (as opposed to paralegal or secretarial work). These entries fall into three main categories: file review, communications with the client, and emails to and from the life care planner.

The petitioner's attorneys recorded 25 "file review" entries, which total $6,098 in fees, or over 14% of the attorneys' fees portion of the bill.[4] See Pet'r's Application for Attorneys' Fees and Costs, filed June 3, 2016, at Exhibit "A". Every entry is identical: "File Review: reviewed case file, notes, t/c notes and medical summaries; discussed next steps with staff." Id. All file review took at least half an hour, and five took an hour to complete. The entries occur almost once every month, and the petitioner's attorneys stated in a status conference that they endeavor to review their cases on a monthly basis to make sure they are on track. This amount of "file review," without an explanation of the necessity for it, is not reasonable. See Brown v. Sec'y of Health & Human Servs., No. 09-426V, 2013 WL 1790212, at *5 (Fed. Cl. Apr. 8, 2013), supplemented, No. 09-426V, 2013 WL 2350541 (Fed. Cl. May 6, 2013) ("It is difficult to comprehend why counsel billed for a general review of the case file at the start of each month when she was actively involved in the case."). Of note, the deductions in Brown were for much smaller increments of time for file review (no more than .4 hours) when compared to the half hour and greater time increments billed in this case. See id.; Pet'r's Application for Attorneys' Fees and Costs at Exhibit "A".

The undersigned's review of the billing entries indicate that over 40 entries concerned attorney-client communication. These entries annotated either email ("emails to and from client re case status, pictures and current condition") or teleconference ("t/c with client re case status, update on current condition") communication. Pet'r's Application for Attorneys' Fees and Costs at Exhibit "A".

The remaining vague entries document communications between the petitioner's attorneys and the petitioner's life care planner ("emails to and from LCPer"). Id. Though not raised by the petitioner's attorneys, perhaps these communications could raise a work-product doctrine issue and, thus, explain the brevity of the relevant entries.

---

[4] The December 29, 2014, "reviewed file" entry is not included in the 25 total because the petitioner's entry explains that the detailed review was in preparation for writing their petition. However, the December 29, 2014 detailed file review makes the subsequent January 6, 2015 "routine" file review unreasonable given that a thorough file review was done by the same attorney only one week before.

In a September 9, 2016 status conference, the undersigned pointed to the attorney-client communication entries as problematic billings.  In response, the petitioner's attorneys asserted that the attorney-client privilege prevented elaboration.

The Federal Circuit has rejected a similar argument.  In a request for fees made pursuant to the Equal Access to Justice Act, an attorney representing a veteran submitted invoices containing descriptions such as "writing to client, reviewing Court's notice of docketing, reviewing litigation file, [t]elephone conversations with VA counsel, and faxing materials to VA counsel." Avgoustis, 639 F.3d at 1344-45 (Fed. Cir. 2011) (internal quotation marks omitted) (citing McDonald v. Nicholson, 21 Vet. App. 257, 265 (2007)).  The Federal Circuit agreed with the Court of Appeals of Veterans Claims that requiring billing entries "adequately identif[y] the purpose of the activities" does "not in most cases invade the attorney-client privilege when applied to client communications." Id.  They also stated generally that "requiring such disclosures does not violate the attorney-client privilege absent unusual circumstances" and that "[c]ourts have also frequently required disclosures of the general subject matter of communications without any indication that they would implicate the attorney-client privilege or that they would raise any conflict with the privilege." Avgoustis, 639 F.3d at 1345.

Nevertheless, the undersigned understands and appreciates the petitioner's attorneys' desire to protect their client's privilege, and perhaps their own work-product.  Undoubtedly, however, there is ample space for more detail between the petitioner's attorneys' repetitive and unenlightening billing entries in this case, and a disclosure of information protected by the attorney-client privilege and/or work-product doctrine.  In future fee applications, the petitioner's attorneys should explore this space, and provide billing entries that adequately support the necessity and appropriateness of their work.

Despite the issues outlined above, it is important to highlight some of the billing entries that were examined by the undersigned and found reasonable.  Mr. Carney billed 7.9 hours, or more than $2,200, in researching lymphedema as a vaccine injury.[5]  Pet'r's Application for Attorneys' Fees and Costs at Exhibit "A".

---

[5] A lymphedema is defined as a chronic unilateral or bilateral edema (swelling) of the limbs due to accumulation of interstitial fluid as a result of stasis of lymph, secondary to

Mr. Carney billed 8.1 hours, and Mr. Cohan 1 hour, for a total of 9.1 hours, and more than $2,700, in drafting the petitioner's demand.[6]  Id.  All billing entries by the petitioner's attorneys' paralegal are also reasonable.  See id.  In short, entries for work performed at the appropriate billing level, and with adequate description to determine the reasonableness of the work, are reasonable.

In addition to the line-by-line evaluation, the undersigned has also considered the petitioner's counsel's fees in the context of the overall case, and experience with similar Vaccine Act litigation.  In short, all factors point to a finding that the petitioner's counsel has billed approximately 10 percent too many hours.  Admittedly, this estimate is not precise.  It is important to recall, however, that "the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  Fox v. Vice, 563 U.S. 826, 838 (2011).  While not precise, the evidence marshalled above is adequate to accomplish "rough justice."  Accordingly, the undersigned finds an appropriate amount of attorneys' fees to be $38,551.22.  This amount includes the additional $725.00 requested for the petitioner's reply to the Secretary's response.

The above analysis is the basis for this decision.  The undersigned, however, has also examined the Secretary's response to the petitioner's motion for attorneys' fees, as well as the petitioner's reply.

The Secretary, in her response to the petitioner's fees motion, cited three cases supporting a fees and costs range between $35,000 and $45,000.[7]  The petitioner, in reply, cited eight cases supporting her attorneys' fees and costs

---

obstruction of lymph vessels or disorders of lymph nodes.  Dorland's Illustrated Medical Dictionary 1084 (32d ed. 2012).

[6] The late November 2015 entries regarding drafting the demand also include a detailed file review which, again, as in footnote four, makes the subsequent December 4, 2015 "routine" file review unreasonable.

[7] The three cases cited by the Secretary are: Abdulla v. Sec'y of Health & Human Servs., No. 13-853V, 2015 WL 9920826 (Fed. Cl. Spec. Mstr. Dec. 23, 2015); Jenney v. Sec'y of Health & Human Servs., No. 14-338V, 2015 WL 7068205 (Fed. Cl. Spec. Mstr. Oct. 23, 2015); George v. Sec'y of Health & Human Servs., No. 13-621V, 2014 WL 3035514 (Fed. Cl. Spec. Mstr. June 13, 2014).

motion.[8]  In this case, the undersigned considered the following case characteristics to determine if cases are comparable in nature and scope: similar legal market to Anapol Weiss (the petitioner's attorneys' firm),[9] settled or conceded case, existence of an expert report, existence of a life care plan, presence of a Medicaid lien, the size of the damages award, and the attorneys' fees and costs broken out separately.[10]

---

[8] The eight cases cited by the petitioner are: Pierce v. Sec'y of Health & Human Servs., No. 14-0881V, 2016 WL 3208056 (Fed. Cl. Spec. Mstr. May 9, 2016); B.K. by Kelley v. Sec'y of Health & Human Servs., No. 14-505V, 2016 WL 1594008 (Fed. Cl. Spec. Mstr. Mar. 29, 2016); Higgins v. Sec'y of Health & Human Servs., No. 13-497V, 2015 WL 3940852 (Fed. Cl. Spec. Mstr. June 1, 2015); Lister v. Secy'y of Health & Human Servs., No. 13-492, 2015 WL 1577634 (Fed. Cl. Spec. Mstr. Mar. 13, 2015); Prevette v. Sec'y of Health & Human Servs., No. 12-662V, 2015 WL 2379339 (Fed. Cl. Spec. Mstr. Apr. 17, 2015); Behie v. Sec'y of Health & Human Servs., No. 13-109V, 2014 WL 4628480 (Fed. Cl. Spec. Mstr. Aug. 27, 2014); Gooden v. Sec'y of Health & Human Servs., No. 12-596V, 2014 WL 4328223 (Fed. Cl. Spec. Mstr. July 29, 2014); Dubin v. Sec'y of Health & Human Servs., No. 10-632V, 2014 WL 1093746 (Fed. Cl. Spec. Mstr. Feb. 26, 2014).

[9] In her attorneys' fees reply, the petitioner states that the cases cited by the respondent are not representative because they were not litigated by Anapol Weiss, the petitioner's attorneys' law firm.  Pet'r's Reply, filed June 20, 2016, at 4.  When comparing vaccine litigation firms, it is not the specific firm and their hourly billing rates that are of primary concern, but that they practice in comparable legal markets.  This is especially true in the Vaccine Program, in which attorneys are usually compensated at the rate prevailing in the forum.  Avera, 515 F.3d at 1348.  Therefore, the Secretary's failure to provide comparable cases litigated by Anapol Weiss does not matter, so long as the Secretary provides comparable (procedurally, factually, etc.) Vaccine Program cases within a legal market similar to Anapol Weiss's.

[10] Both the petitioner and the respondent did not always break out attorneys' fees and costs separately (even when possible).  Where possible, the distinction should be made when citing comparable cases.

The cases breakdown as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Florence, 15-255V, Submitted Comparable Cases** | | | | | | | | | |
| **Pet. or Resp.** | **Name** | **Injury** | **Resolution** | **Expert** | **LCP** | **Damages** | **Lien** | **Firm Location** | **Attorneys' Fees** | **Costs (2)** |
| | Florence | Lymphedema | Conceded | No | Yes | ~$258k + Annuity | Yes | Philadelphia, PA | $ 38,551.22 | $11,448.78 |
| Respondent | Abdulla | SIRVA | Conceded | No | Yes | ~$177k + Annuity | No | Boston, MA | $ 33,184.29 | $ 350.00 |
| Respondent | Jenney | SIRVA | Conceded | No | Yes | ~$156k + Annuity | Yes | Boston, MA | $ 28,486.70 | $ 8,974.82 |
| Respondent | George | SIRVA | Conceded | No | No | ~$1M | No | Lake Charles, LA | $ 30,000.00 | $17,500.00 |
| Petitioner | Pierce | Flu/GBS | Settled | No | Yes | ~$1.2M + Annuity | No | Philadelphia, PA | $ 46,692.50 | $17,030.59 |
| Petitioner | B.K. | Flu/GBS | Settled | No | Yes | ~$196k + Annuity | No | Philadelphia, PA | $ 44,120.00 | $18,157.88 |
| Petitioner | Higgins | Flu/GBS | Settled | No | Yes | ~$1M + Annuity | No | Philadelphia, PA | $ 48,120.07 | $23,379.93 |
| Petitioner | Lister | Flu/GBS | Settled | No | Yes | ~$500k + Annuity | No | Philadelphia, PA | $ 66,725.07 | (included) |
| Petitioner | Prevette | Flu/GBS | Settled | Yes | Yes | ~$1M + Annuity | No | Philadelphia, PA | $ 47,500.05 | $26,718.95 |
| Petitioner | Behie | Flu/GBS | Settled | Yes (1) | Yes | ~$1M | Yes | Philadelphia, PA | $ 50,048.25 | $34,261.61 |
| Petitioner | Gooden | Flu/GBS | Settled | Yes | No | ~$460k | No | Philadelphia, PA | $ 31,226.12 | $10,773.88 |
| Petitioner | Dubin | Flu/GBS | Settled | Yes | No | ~$260k | Yes | Philadelphia, PA | $ 55,000.00 | (included) |

Note (1): The petitioner stated there was not an expert in this case, and therefore included it in her calculation of attorneys' fees awards that did not include expert reports, which yielded an attorneys' fees and costs calculation of $67,617.18. There was an expert in 13-109V, and therefore it should not have been included. Without 13-109V included, the average drops to $66,056.51. The attorneys' fees amount for these four cases, alone, average $51,414.41.

Note (2): In cases where costs were broken out separately, it is assumed that in any negotiated settlement the amount of costs remained fixed.

The Secretary cited shoulder injury related to vaccine administration ("SIRVA") cases, while the petitioner cited influenza with Guillain-Barré syndrome ("GBS") cases. The likelihood of both types of cases to be conceded, or settled, makes them an appropriate choice for this conceded lymphedema case.[11]

Once a chart like this is developed, the data can be used to achieve the "essential goal [of] . . . rough justice." See Fox, 563 U.S. at 838. "Rough justice" suggests that relatively similar cases should have relatively similar attorneys' fees and costs.

Some of the proposed comparators are not sufficiently similar to the present case to be included in the analysis. For example, George, 13-621V, a case that the Secretary proposed, should not be included in any calculations because the rates

---

[11] The petitioner consistently characterized this case as a lymphedema case, as opposed to a SIRVA case. Given that Ms. Florence's injury (lymphedema, or swelling) was in her shoulder, and given that the Secretary immediately conceded entitlement, it remains unclear how this case would have proceeded differently from a SIRVA case. Nonetheless, as discussed above, the undersigned has credited the petitioner with all research associated with lymphedema.

attorneys charge in Lake Charles, Louisiana, are likely not comparable to the petitioner's attorneys' rates in Philadelphia, Pennsylvania.  After removing George, the average of the attorneys' fees from the two cases the Secretary cited is $30,835.50 (or ($33,184.29 + $28,486.70) / 2).

In examining the petitioner's comparable cases, and similar to what the petitioner did in her reply, the cases with causation experts should be excluded, as this case did not require one.  See Pet'r's Reply at 5.  Of note, however, Behie, 13-109V, which the petitioner stated did not have an expert, actually did, and therefore will be removed from the below calculation.  Additionally, Lister, 13-492, includes attorneys' fees and costs as a lump sum, and the undersigned cannot determine what portion of that is attorneys' fees, and what portion is costs.  Therefore, it is excluded.  That leaves Pierce, B.K., and Higgins (14-0881V, 14-505V, and 13-497V) in the calculation, resulting in an attorneys' fees average of $46,310.86 (or ($46,692.50 + $44,120.00 + $48,120.07) / 3).

That creates an approximate range for attorneys' fees of $31,000 to $46,000.  The midpoint of this range is $38,500.  The lodestar calculation yielded a result of $38,551.22.  Thus, the parties' analogous cases, viewed in total, are further evidence supporting the separately calculated lodestar value.

In addition to the award of attorneys' fees, the petitioner also requests an award of costs.  The undersigned considered costs associated with this case, and found them to be reasonable.  Accordingly, the undersigned finds an appropriate amount of costs to be $11,448.78.

\* \* \*

The Vaccine Act permits an award of reasonable attorneys' fees and costs.  §15(e).  The undersigned finds $50,000 ($38,551.22 in fees and $11,448.78 in costs) to be a reasonable amount for all attorneys' fees and costs incurred.  The undersigned GRANTS the petitioner's motion and awards **$50,000.00** in attorneys' fees and costs.  This shall be paid as follows:

> **A lump sum payment of $50,000.00, in the form of a check made payable jointly to the petitioner and the petitioner's attorney, Lawrence R. Cohan, Anapol Weiss, for attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).**

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master
